Filed 2/25/14  P. v. Mitchell CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B247553 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA121830) |
| v. | |
| RAMOND MITCHELL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Eleanor J. Hunter, Judge.  Affirmed.

Steven A. Brody, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Chung L. Mar and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Ramond Mitchell was charged with two counts of robbery (Pen. Code, § 211)[1] but was convicted by a jury of one count of the lesser included offense of grand theft (§ 487, subd. (a)). The trial court found that appellant had one prior felony conviction under the Three Strikes law (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)). Appellant was sentenced to a prison term of four years in state prison consisting of the middle term of two years, doubled for the prior strike. The court awarded 307 credit days consisting of 268 days of actual custody time and 39 days of conduct credits.[2] The sole contention on appeal is that the evidence failed to show that the owner did not consent to the taking. We affirm.

## PROCEDURAL HISTORY

The matter proceeded to a jury trial. At the close of evidence and after the jury instructions were read, appellant requested leave to reopen so that he could testify. After he had testified, the court instructed the jury on the lesser included offense of grand theft without objection from the defense.

The jury returned verdicts of not guilty on the two counts of second degree robbery. The jury found appellant guilty of one count of grand theft.

## FACTS[3]

**A.    Prosecution Evidence**

Tiffany Cox knew appellant on a personal level through a friend. Cox had a couple of sexual encounters with appellant, whom she considered a friend. Appellant

---

[1]    All further statutory references are to the Penal Code.

[2]    The award of credits was allegedly amended on July 6, 2013, to reflect an award of 414 total credit days consisting of 276 days of actual custody and 138 days of conduct credits. The clerk's transcript does not include the order amending the awarded credits. The issue of the credits awarded is not raised in this appeal.

[3]    Since the differing versions of the altercation that led to criminal charges is basic to the case, we summarize the evidence separately for the two sides.

2

was "always on my [Cox's] bumper . . . calling [her] phone, texting [her], send[ing] [her] pictures."

On September 1, 2011, Cox got a text message from appellant wanting her to come "hang out" with him. Appellant told her to bring a friend because he himself was with a friend. At the time, Cox was out shopping with her friend Lynn Hill.

Appellant told Cox to meet him at an apartment complex with which she was familiar but which she had never seen on the inside. Cox drove to the complex with Hill. Appellant gave her the okay to drive through the apartment complex and told her where to park. Cox parked, got out of her car, and appellant walked her and Hill to the elevator.

Cox, Hill and appellant went up the elevator. Once off the elevator, appellant turned around, holding a gun.

Cox saw the gun first, then heard appellant say, "Put your purse down." Cox put her purse down. Hill initially did not see the gun but heard a "click, click" and "[d]rop your purse." After Cox dropped her purse, appellant put the gun on Hill's stomach and threatened to shoot her if she did not drop her purse. Hill dropped her purse.

Cox and Hill ran down the stairs that were in the opposite direction from the elevator. Cox was "scared to death, trying to get to a public area."

When they got outside the complex, Hill called 911. Cox also called 911. Her call was not as far along as Hill's, so she hung up her 911 call. Hill gave Cox the phone so she could give the police directions.

Hill went back inside the complex to look for help. Hill found the purses on top of Cox's car. Their wallets were the only things missing from the purses.

**B.    Defense Evidence**

Appellant testified that he considered Cox to be a friend or, more accurately, a "friend with benefits." The day before the incident, Cox called appellant saying that she had a "sucker that she wanted to rip off of some marijuana." [4] Appellant agreed. The

---

[4]    Appellant implied that the unknown drug dealer was a person from whom appellant received a voicemail sometime after the incident. The caller identified himself

3

next day, Cox called him and told him that she was ready. Cox came to Paramount where appellant was at an apartment complex where he used to live. Appellant directed Cox and Hill into the underground parking garage.

Cox was carrying half a pound of marijuana. Appellant tried to take the marijuana in the parking garage. Cox said no because people were coming in and out. They went up the elevators to the second floor and went through the transaction there. Cox gave appellant the marijuana. Cox and Hill then left.

Appellant denied having a gun on him. He denied pulling a gun on the women.

Appellant divided the marijuana with Cox the next day at a McDonald's. Cox got two ounces of the marijuana and appellant kept about six ounces.

## C.    Rebuttal Evidence

In rebuttal, the prosecution called Erik Shear, a detective with the Los Angeles Police Department. Detective Shear testified that "cush" marijuana is street vernacular for high-grade marijuana. A pound of "cush" marijuana sells for about $5,000 to $6,000; $2,500 to $3,000 for half a pound of "cush" marijuana is common. Detective Shear also testified that it was uncommon in the narcotics world for people to "front" drugs to be sold because, chances were, they were never going to get their money back from it.

### DISCUSSION

Appellant contends that there was no evidence presented that the marijuana was taken without its owner's consent. Appellant reasons that the grand theft charge and conviction had to relate to the marijuana because the trial court, before instructing the jury on grand theft, noted that an officer had testified that the marijuana in question was valued over $950.[5] Appellant goes on to contend that the only evidence about the taking

---

as "Twist." The message was related to Cox and the marijuana. Appellant did not return the call. However, "Twist" was the person who told appellant that he had been reported by Cox as a suspect in a robbery.

[5]    Under subdivision (a) of section 487, grand theft is the taking of property in excess of $950.

4

of the marijuana was his testimony that Cox told him that she would take the marijuana from the dealer on the pretense that it was to be sold to appellant. The thrust of this argument is that it is simply unknown how, or under what circumstances, Cox obtained the marijuana from the dealer.

The premise of this argument is mistaken. The grand theft here was the taking, by appellant, of the marijuana from Cox, not the taking of the marijuana by Cox from the dealer.

It is true that one of the elements of grand theft is a taking of property without the owner's consent. (CALCRIM No. 1800; *People v. Williams* (2013) 57 Cal.4th 776, 783.) But the "owner" need not actually be the owner, in the sense of holding legal title. "A person may be the victim of larceny even though he is not the owner; he need only have a special property right, as in the case of a bailee or pledgee." (Footnote omitted.) (3 Torcia, Wharton's Criminal Law (15th ed. 1995) Larceny, § 381, pp. 454-455, citing, inter alia, *People v. Nelson* (1880) 56 Cal. 77, 82.) "A second thief is guilty of larceny even though he steals the property from the first thief." (3 LaFave, Substantive Criminal Law (2d ed. 2003) § 19.4(c), p. 86.) It is enough that Cox had possession of the marijuana and that appellant took the marijuana without her consent. (*People v. Nelson*, at p. 82; accord, *People v. Davis* (1893) 97 Cal. 194, 195.)[6]

There was circumstantial evidence from which the jury could have reasonably inferred that Cox did not consent to the taking of the marijuana by appellant. Both Cox and Hill immediately called the police after they had fled the scene. They would have hardly done that if the taking had been with their consent. On the other hand, if they had called the police several days after the incident, doubts could well arise about the nature of the taking.

---

[6] As noted by LaFave, the Model Penal Code and several jurisdictions, California not among them, expressly provide that the victim of larceny includes a person whose interest in the property is unlawful. (3 LaFave, Substantive Criminal Law, *supra*, § 19.4(c), at p. 86.) Although there is no such statute in California, *People v. Nelson* approvingly states the same rule. (56 Cal. at p. 82.)

One should add the consideration that the women came to the scene voluntarily, expecting a social encounter, but ended up placing 911 calls to the police. Something obviously went wrong here and that something was a violent confrontation over the marijuana. It is worth noting that the women's description of how appellant pulled the gun and threatened them was detailed and credible.

In his reply brief, appellant claims that the theory that he committed grand theft when he took the marijuana from Cox was never presented to the jury. This is not correct. The prosecutor contended in his closing argument that appellant intended all along to rob the women and that, in his own testimony, he admitted to the robbery. Because appellant testified about the marijuana, the prosecutor's theory was that the net effect of appellant's testimony was that he robbed Cox of the marijuana. The prosecutor stated that he did not think that this was reasonable (robbery of the wallets was more reasonable) but he unambiguously went on to say that this was a choice that the jury could make.

We conclude that the jury in this case could rationally find that Cox did not consent to the taking of the marijuana. (*People v. Marshall* (1997) 15 Cal.4th 1, 34 [the question is whether a rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt].)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

BOREN, P.J.

We concur:

ASHMANN-GERST, J.          FERNS, J.*

_____

\*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

6