Filed 1/11/16  P. v. Carver CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D066914 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE337431) |
| SHANE CHRISTOPHER CARVER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Patricia K. Cookson, Judge. Affirmed.

Joshua H. Schraer and Anna M. Jauregui-Law, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

## I.

## INTRODUCTION

The People charged Shane Christopher Carver with attempted robbery (Pen. Code, §§ 211, 664)[1] (count 1) and attempted grand theft from a person (§§ 487, subd. (c), 664) (count 2). The People also alleged that Carver had served a prior prison term (§ 667.5, subd. (b)), and had suffered a prior serious felony conviction (§ 667, subd. (a)(1)) and a prior strike conviction (§ 667, subds. (b)-(i)). A jury found Carver guilty of attempted robbery (count1), but not guilty of attempted grand theft from a person (count 2). Carver then admitted the prison prior, serious felony, and strike allegations. At sentencing, the trial court granted Carver's motion to dismiss the prior strike and also struck the prison prior for purposes of sentencing. The court then sentenced Carver to an aggregate term of six years and four months in prison, consisting of the lower term of 16 months on count 1, and an additional five-year consecutive term for the serious felony prior.

On appeal, Carver contends that the record lacks substantial evidence to support the jury's verdict finding him guilty of attempted robbery. We affirm the judgment.

## II.

## FACTUAL BACKGROUND

On January 24, 2014, at 9:50 a.m., victim Diego Medina approached a bus stop platform in Alpine on his motorized scooter. As Medina arrived at the stop, Carver was seated on a curb next to the stop. Carver asked Medina what time the bus was supposed

---

[1] All subsequent references are to the Penal Code, unless otherwise specified.

to arrive. Medina responded that the bus was scheduled to arrive at 10:15 a.m. Carver then asked Medina where he could get some "weed" and some "coke." Medina responded that he did not " 'know anything about that.' "

Carver next asked Medina if he was a "Mongol," to which Medina replied that he did not know what Carver was talking about. Carver became agitated and said, " 'I hate the fucking Mongols,' " and told Medina that he was the president of the Hell's Angels. Carver began to yell, " 'When is that fucking bus going to get here?' "

Carver then stood up and told Medina that he was going to "bust a cap in [Medina's] ass." Medina responded, " 'Do what you've got to do.' " Medina felt anxious. No one else was around. Carver came closer to Medina, yelled at him to get up from the scooter, and threatened to "fuck [him] up." Carver then punched Medina twice on Medina's right side. When Carver threw a third punch, Medina "pulled a bit back" and Carver "merely tapped [Medina's] chest." Media pulled out a cell phone from his "left pocket"[2] in order to call police. Carver "tried to grab it" and attempted to "snatch" it away, but Medina "snagged it back and put it in [his] pocket." Carver was not able to touch the phone, but he did make contact with Medina's hand. While Carver was attempting to grab the phone, he kept telling Medina that he was going to "fuck [Medina] up."

---

[2]     Although it is not entirely clear from the record, it appears that Medina had the cell phone in the left pocket of a jacket that he was wearing.

Medina used his scooter to escape to a nearby restaurant and asked someone to call the police. From inside the restaurant, Medina saw Carver running away. During the incident, Medina felt scared.

Law enforcement responded to the scene and located Carver approximately half a mile from the bus stop.

## III.

## DISCUSSION

*There is substantial evidence to support the*
*jury's verdict finding Carver guilty of attempted robbery*

Carver claims that the record lacks substantial evidence to support the jury's verdict finding him guilty of attempted robbery.

A.      *Governing law and standard of review*

       1.      *The law governing substantial evidence challenges*

In determining the sufficiency of the evidence to support a guilty verdict, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.) "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) " 'Substantial evidence includes circumstantial evidence and any reasonable

4

inferences drawn from that evidence. [Citation.]' [Citation.] We ' " 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " ' " (*People v. Clark* (2011) 52 Cal.4th 856, 943.)

2.  *Relevant substantive law*

In *People v. Williams* (2013) 57 Cal.4th 776, 786, the Supreme Court outlined the elements of robbery as follows:

> "Robbery is 'the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.' (§ 211.) Reflected in that statutory definition are larceny's elements of 'the taking of another's property, with the intent to steal and carry it away.' "

"An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.) Thus, in order to prove the commission of an attempted robbery, the People are "required to prove (1) the specific intent to commit robbery, and (2) an act—described in section 21a as a 'direct but ineffectual act done toward its commission.' " (*People v. Watkins* (2012) 55 Cal.4th 999, 1018.)

B.  *Application*

Carver contends that the record lacks substantial evidence to support a finding that he was "trying to deprive Medina of his phone permanently," and that "[*i*]*nstead*" (italics added), the evidence demonstrates that "[Carver] was trying to prevent Medina from using the phone to call the police and report the assault." We agree with the People that

5

this argument fails because a reasonable jury could find that Carver intended *both* to prevent Medina from calling the police *and* to permanently deprive him of the phone.

Medina testified that Carver repeatedly punched him and then "tried to grab" his phone, while saying that he was going to "fuck [Medina] up." Carver acknowledges that "[o]rdinarily, when a defendant forcibly tries to wrest an item of property from another person, a jury reasonably can conclude that the defendant's intent is to deprive the owner of the property permanently or for an extended period of time." We agree. (Cf. *People v. Pre* (2004) 117 Cal.App.4th 413, 420 ["Intent is rarely susceptible of direct proof and usually must be inferred from the facts and circumstances surrounding the offense"].) Thus, in this case, the jury could reasonably have found that Carver's act in attempting to forcibly take Medina's phone from him reflected Carver's intent to deprive Medina of the phone permanently or for an extended period of time.

Carver suggests that his intoxication, belligerence, and physical superiority over Medina, combined with a lack of evidence that he asked Medina for the phone or that he "was in need of a phone," demonstrates that no reasonable jury could find that he intended to steal the phone. We are not persuaded. While a reasonable jury might have concluded that Carver intended *only* to dissuade Medina from calling the police, in light of the evidence discussed in part II., *ante*, it is clear that a reasonable jury could find that Carver intended to prevent Medina from calling the police *by stealing his phone*. A reasonable jury also could have found that if Carver had obtained the phone, he would not have given it back before absconding. Our function is not to reweigh the evidence already evaluated and considered by the jury. (*People v. Fuiava* (2012) 53 Cal.4th 622,

6

711 [a " 'substantial evidence inquiry examines the record in the light most favorable to the judgment and upholds it if the record contains reasonable, credible evidence . . . upon which a reasonable trier of fact *could* have relied in reaching the conclusion in question,' " and noting that " '[o]nce such evidence is found, the substantial evidence test is satisfied . . . [e]ven when there is a significant amount of countervailing evidence' "].) Further, the jury's implicit finding that Carver intended to steal the phone is supported by Medina's testimony that Carver attempted to "grab" and "snatch" the phone, as opposed to merely knock the phone out of Medina's hand.

Finally, we reject Carver's contention that a question that the jury asked during deliberations purportedly establishing that the jury "struggled" with the question of Carver's intent during the incident, "reveals that the evidence of intent to permanently deprive was weak, and 'not of solid value.' "[3] Even assuming that the jury "struggled" with the issue of Carver's intent, such a circumstance would not demonstrate that there is a lack of substantial evidence supporting the jury's implicit finding resolving that struggle. (*People v. Valdez* (2004) 32 Cal.4th 73, 104 [in considering a sufficiency claim,

---

[3] During deliberations, the jury asked, " 'Must #5 be answered yes in order to determine if a robbery occurred?' " The court responded, "Element five of [CALCRIM No. 1600] must be proved beyond a reasonable doubt in order for a robbery to have occurred." The trial court instructed the jury concerning this element as follows, "And Number 5, when the defendant used force or fear to attempt to take the property, he intended to deprive the owner of it permanently or to remove it from the owner's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property."

the fact " ' " 'that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment' " ' "].)[4]

Accordingly, we conclude that there is substantial evidence to support the jury's verdict finding Carver guilty of attempted robbery.

## IV.

## DISPOSITION

The judgment is affirmed.

AARON, J.

WE CONCUR:

HUFFMAN, Acting P.J.

McDONALD, J.

---

[4] In his reply brief, Carver argues for the first time on appeal that the fact that the jury rendered a not guilty verdict on the attempted grand theft count "could . . . indicate" that the jury reached a compromise verdict despite the "paucity of evidence for both counts." We decline to consider this contention because Carver had not demonstrated good cause for raising it for the first time in reply. (See *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894, fn. 10, [" ' "points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before" ' "].)