Filed 9/19/16  P. v. Huberty CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LARA JENE HUBERTY et al.,<br><br>    Defendant and Appellant. | D069103<br><br><br><br>(Super. Ct. No. SCD255367) |

APPEAL from an order of the Superior Court of San Diego County, Robert F. O'Neill, Judge.  Reversed and remanded with directions.

Paul Kleven, under appointment by the Court of Appeal, for Defendant and Appellant Lara Jene Huberty.

Gene D. Vorobyov, under appointment by the Court of Appeal, for Defendant and Appellant Jesse Cartwright.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Christen Somerville, Deputy Attorneys General, for Plaintiff and Respondent.

In April 2014, Lara Jene Huberty and Jesse Cartwright entered a no contest plea to one count of second degree burglary (Pen. Code,[1] § 459). They were granted probation.

Following the passage of Proposition 47 (§ 1170.18, the Safe Neighborhoods and Schools Act), Huberty and Cartwright filed petitions to reduce their convictions to a misdemeanor under newly enacted section 459.5. The trial court concluded that obtaining merchandise from a commercial establishment by means of the use of a stolen credit card did not qualify as "shoplifting" as defined in section 459.5. The trial court concluded that shoplifting was restricted to the taking of items of merchandise by means of common law larceny. Accordingly, the trial court denied the petition.

On appeal Huberty and Cartwright contend that theft by false pretenses or the fraudulent use of a credit card qualifies as shoplifting as defined in section 459.5.[2]

We will conclude the use of a stolen credit card at a Rite Aid store to obtain $134 in merchandise qualifies as shoplifting as defined in the new statute. Accordingly, we will reverse the order denying the petitions and remand the case to the trial court with

[1]     All further statutory references are to the Penal Code unless otherwise specified.

[2]     Section 459.5 provides: "(a) Notwithstanding Section 459, shoplifting is defined as entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950). Any other entry into a commercial establishment with intent to commit larceny is burglary. Shoplifting shall be punished as a misdemeanor, except that a person with one or more prior convictions for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290 may be punished pursuant to subdivision (h) of Section 1170. [¶] (b) Any act of shoplifting as defined in subdivision (a) shall be charged as shoplifting. No person who is charged with shoplifting may also be charged with burglary or theft of the same property."

2

directions to grant the petitions. In light of our decision on the merits of the petition we decline to discuss Huberty's remaining arguments.

DISCUSSION

This case involves entry by Huberty and Cartwright into a Rite Aid store, during regular business hours. During that visit, the defendants used a stolen credit card to purchase a small amount of goods. The dispute here surrounds the term "larceny" as used in section 459.5 and whether it should be read to include all thefts as is required by the same language in the burglary statute (§ 459)[3] as it has been interpreted in light of section 490a. The People focus solely on the word "shoplifting" and insist, notwithstanding the similarity of the wording of sections 459 and 459.5, we must interpret the statute in light of dictionary meanings of the term shoplifting, out of context from the language of the statute actually enacted. We are satisfied we must interpret the actual language of the statute in light of the established meaning of its terms. We have

_____

[3]      Section 459 provides: "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, as defined in Section 21 of the Harbors and Navigation Code, floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, railroad car, locked or sealed cargo container, whether or not mounted on a vehicle, trailer coach, as defined in Section 635 of the Vehicle Code, any house car, as defined in Section 362 of the Vehicle Code, inhabited camper, as defined in Section 243 of the Vehicle Code, vehicle as defined by the Vehicle Code, when the doors are locked, aircraft as defined by Section 21012 of the Public Utilities Code, or mine or any underground portion thereof, with intent to commit grand or petit larceny or any felony is guilty of burglary. As used in this chapter, "inhabited" means currently being used for dwelling purposes, whether occupied or not. A house, trailer, vessel designed for habitation, or portion of a building is currently being used for dwelling purposes if, at the time of the burglary, it was not occupied solely because a natural or other disaster caused the occupants to leave the premises."

found nothing in the materials connected with the voters' approval of Proposition 47 that would lead us to believe the voters intended to distinguish between types of essentially petty thefts that happen to occur within a building.

We think it important to bear in mind the theft in this case was only prosecutable as a possible felony because the defendants entered a store with the intent to commit theft. We think the better analysis of the new statute is that the voters intended petty thefts in open businesses not be elevated to felonies by the happenstance they occur inside the store rather than outside.

Finally, by way of introductory comment, we are aware our Supreme Court has granted review in virtually every published or nonpublished opinion construing this section. We are aware the court will ultimately provide guidance on the proper interpretation. In the interim it is our task to decide the cases before us to the best of our ability.

Appellants contend the trial court's analysis of sections 459.5 and 490a was flawed. They argue that the intent to commit larceny as used in section 459.5 must be read consistently with the case law analyzing the same language in section 459. The People, on the other hand, argue we should focus on the common sense meaning of the term "shoplifting" and give it a dictionary meaning without reference to sections 459 and 490a. The People also argue that the appellants did not enter the Rite Aid store with the intent to commit theft by larceny. They contend they entered with the intent to commit theft with a stolen credit card.

4

The question presented here is whether we restrict our analysis of section 459.5 to the dictionary meaning of the term shoplifting or whether we should interpret the statutory language in light of well-established definitions existing prior to the enactment of section 459.5. We opt for the latter approach.

## A. Legal Principles

Proposition 47 added section 1170.18, which allows "[a] person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under [Proposition 47 had it] been in effect at the time of the offense" to "petition for a recall of sentence" and request resentencing. (§ 1170.18, subd. (a).) A person seeking resentencing under section 1170.18 must show he or she fits the criteria in subdivision (a). If the person satisfies the criteria the person shall have his or her sentence recalled and resentenced to a misdemeanor, unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety. (§ 1170.18, subd. (b); *T. W. v. Superior Court* (2015) 236 Cal.App.4th 646, 649, fn. 2.)

Relevant here, Proposition 47 also added a new crime of shoplifting, which is defined as "entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950)." (§ 459.5, subd. (a).)

In interpreting section 459.5, appellants urge we must look to section 490a for guidance. Section 490a provides, "[w]herever any law or statute of this state refers to or

5

mentions larceny, embezzlement, or stealing, said law or statute shall hereafter be read and interpreted as if the word 'theft' were substituted therefor."

Specifically, our issue requires us to find the correct interpretation of the term "larceny" as used in section 459.5. " 'In interpreting a voter initiative like [Proposition 47], we apply the same principles that govern statutory construction.' [Citation.] " 'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]' " [Citation.] In the case of a provision adopted by the voters, 'their intent governs.' [Citation.] [¶] 'In determining such intent, we begin with the language of the statute itself.' [Citation.] We look first to the words the voters used, giving them their usual and ordinary meaning. " 'If there is no ambiguity in the language of the statute, then . . . the plain meaning of the language governs.' " [Citation.] "But when the statutory language is ambiguous, 'the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes.' " [Citation.] [¶] In construing a statute, we must also consider " 'the object to be achieved and the evil to be prevented by the legislation.' " [Citation.] 'When legislation has been judicially construed and a subsequent statute on a similar subject uses identical or substantially similar language, the usual presumption is that the Legislature [or the voters] intended the same construction, unless a contrary intent clearly appears.' " (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1099-1100.)

6

B. Analysis

The People contend appellants did not commit shoplifting when they entered a Rite Aid store with the intent to commit theft by use of a stolen credit card because shoplifting requires an intent to commit common law larceny. Also, the People argue section 490a is inapplicable because it does not redefine larceny as any theft. We are not persuaded by these arguments. Historically, the term "larceny" as used similarly in the burglary statute has been interpreted to include all thefts, including theft by false pretenses. (*People v. Dingle* (1985) 174 Cal.App.3d 21, 30; *People v. Nguyen* (1995) 40 Cal.App.4th 28, 31; *People v. Parson* (2008) 44 Cal.4th 332, 353-354.)

In *People v. Williams* (2013) 57 Cal.4th 776 (*Williams*), our high court discussed whether a man who committed theft by false pretenses and subsequently pushed a security guard in an attempt to flee could satisfy the "felonious taking" requirement of robbery. (*Id.* at pp. 779-780.) One element of robbery, which is not present in any other type of theft, is the "felonious taking" requirement. The defendant argued that the "felonious taking" requirement could only be satisfied by the crime of theft by larceny, and not theft by false pretenses. (*Id.* at p. 781.) The court, after analyzing the common law meanings of the different theft offenses, found that larceny is a necessary element of robbery. (*Id.* at pp. 786-787.) Thus, *Williams* held that theft by false pretenses could not support a robbery conviction, because only theft by larceny could fulfill the "felonious taking" requirement.

The analysis in *Williams, supra,* 57 Cal.4th 776 is distinguishable from our current issue of whether section 459.5 can be satisfied by theft by false pretenses. This is

7

because the term "larceny" is not actually present in the statute defining robbery (§ 211). As such, *Williams* looked at the common law meaning of larceny in order to reach the conclusion that larceny is a necessary element of robbery. Therefore, the court was not analyzing the statutory interpretation of the term "larceny," but was analyzing the common law meanings and relations of the different theft crimes.

Conversely, in *People v. Nguyen* (1995) 40 Cal.App.4th 28 (*Nguyen*), we discussed whether a defendant could be convicted of burglary for entering the premises of another with the intent to commit theft by false pretenses. *Nguyen* held that the term "larceny" as used in the burglary statute included theft by false pretenses. In reaching our conclusion, we noted that section 490a shows "the Legislature has indicated a clear intent that the term 'larceny' as used in the burglary statute should be read to include all thefts, including 'petit' theft by false pretenses." (*Id.* at p. 31.) The *Nguyen* holding is more on point with the issue here, because, unlike *Williams, supra,* 57 Cal.4th 776, we analyzed the interpretation of the term "larceny" as used in a statute.

Additionally, the People argue, in enacting section 459.5, the voters intended to restrict its application to stealing goods or merchandise openly displayed in retail stores. The People assert that "shoplifting" has long and commonly been understood to encompass only the theft of openly displayed merchandise from commercial establishments. As such, the People contend the voters' reasonable belief was that the crime of "shoplifting" referred only to the common understanding of that crime. However, in viewing the plain text of the statute, we find nothing to support that contention. Had the voters intended for "shoplifting" to be confined to that limited

8

meaning, that intention could have easily been expressed in the text of the statute. Instead, the statute was worded substantially similar to the burglary statute (§ 459), which has been judicially interpreted to encompass all thefts. As previously noted, "[w]hen legislation has been judicially construed and a subsequent statute on a similar subject uses identical or substantially similar language, the usual presumption is that the Legislature [or the voters] intended the same construction, unless a contrary intent clearly appears." (*Rivera*, *supra*, 233 Cal.App.4th at p. 1100.) We find no indication that a distinction was intended to be made between sections 459 and 459.5 in regard to the interpretation of the term "larceny."

The People urge us to apply the definition of "shoplifting" as used in dictionaries and as discussed in Wharton's treatise on criminal law (3 Wharton's Criminal Law (15th ed. 2015) § 343). "Shoplifting" is simply the name of the new offense, not its definition. We decline to take that approach. The statute does not contain any definition of shoplifting other than setting forth the elements of the offense in the specific language of section 459.5. We decline to speculate whether the voters had to resort to dictionaries in formulating their views on the statute. We find it even more unlikely that they were familiar with Wharton's criminal law treatise. In short we remain satisfied that analysis of the language of the statute, in light of the case law defining the terms, is the best indicator of the voters' intent.

Our interpretation is consistent with the voters' overall intent in passing Proposition 47. Proposition 47 was intended to "[r]equire misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft and drug possession, unless the

9

defendant has prior convictions for specified violent or serious crimes." (Ballot Pamp., Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 3, p. 70.) Petty theft by false pretenses is precisely the type of nonserious, nonviolent crime Proposition 47 was aimed towards affecting. For example, Proposition 47 also made the crimes of forgery and drafting checks without sufficient funds of less than $950 misdemeanors. (§ 473, subd. (b); § 476a.) Moreover, theft by false pretenses is less likely to involve violence than a situation where a person has the intention to steal openly displayed merchandise from a store. To provide misdemeanors for common law larceny, but not for theft by false pretenses, would contradict the voters' general intent of requiring misdemeanor treatment for nonserious, minor, nonviolent theft crimes.

In considering section 490a, we find that it requires us to have the word "larceny" read as "theft" in section 459.5. As such, the "intention to commit larceny" requirement of section 459.5 can be satisfied by the broader sense of an intent to commit theft. Thus, an intent to commit theft by false pretenses would satisfy that element. Not only is this consistent with prior case law regarding the interpretation of the term "larceny" as used in section 459, but it is also consistent with the voters' intent in passing Proposition 47. Lastly, interpreting the term "larceny" differently in section 459.5 than we would in section 459 would cause the interpretations of the two related statutes to be inconsistent and would ignore the mandate of section 490a.

DISPOSITION

The order denying Huberty's and Cartwright's petitions to reduce the burglary count to shoplifting is reversed and remanded, with directions to grant the petitions.

HUFFMAN, J.

WE CONCUR:

BENKE, Acting P. J.

HALLER, J.

11