[No. B111463. Second Dist., Div. One. July 2, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
LANIER DESHON CLAYTON, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The only parts to be published are the introduction (the first paragraph) and part IV, not the statement of facts or part I, II or III.

**COUNSEL**

Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Marc Turchin and Lori M. Gong, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**VOGEL (Miriam A.), J.**—Lanier Deshon Clayton was hired by Richard August to murder Richard's wife, Kathleen. With a key provided by Richard, Clayton gained entry into the house where Richard and Kathleen lived with their children. Clayton attacked Kathleen. Kathleen fought back and Clayton ran off. He was arrested nearby and ultimately convicted of conspiracy to commit murder, attempted murder and burglary, enhanced by a deadly weapon allegation. In the published portion of this opinion, we reject Clayton's contention that his burglary conviction must be reversed because he entered the residence with Richard's consent. In the unpublished portion of this opinion, we reject Clayton's other claims of error. We affirm the judgment of conviction in its entirety.

FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

DISCUSSION

I.-III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 418.

## IV.

Clayton contends his burglary conviction cannot stand because he entered the house with Richard's consent (Richard gave Clayton a key to the house so that Clayton could enter to murder Kathleen). We disagree.

Historically, *any* entry into a structure enumerated in Penal Code section 459 with the intent to commit a felony constituted a burglary without regard to the circumstances of the entry.[2] (*People* v. *Salemme* (1992) 2 Cal.App.4th 775, 779 [3 Cal.Rptr.2d 398].) In *People* v. *Gauze* (1975) 15 Cal.3d 709 [125 Cal.Rptr. 773, 542 P.2d 1365], the Supreme Court revisited this issue in the context of a defendant charged with burglarizing his own apartment (he entered intending to assault his roommate), explained that section 459 is "designed to protect a possessory right in property, rather than broadly to preserve any place from all crime" (*People* v. *Gauze, supra,* 15 Cal.3d at p. 713), and held that when the defendant has an absolute right of entry into the apartment he is charged with burglarizing, he cannot be guilty of burglary.[3] As the Supreme Court put it: "In contrast to the usual burglary situation, no danger arises from the mere entry of a person into *his own home,* no matter what his intent is. He may cause a great deal of mischief once inside. But no emotional distress is suffered, no panic is engendered, and no violence necessarily erupts merely because he walks into his house. To impose sanctions for burglary would in effect punish him twice for the crime he committed while in the house. In such circumstances it serves no purpose to apply section 459." (*People* v. *Gauze, supra,* 15 Cal.3d at pp. 715-716, italics added.)

Unlike the defendant in *Gauze,* Clayton was not convicted of burglarizing his own home. Richard, not Clayton, shared possession of the house with Kathleen, and the question is whether Richard's consent to enter precludes a burglary conviction based upon Clayton's entry with the intent to murder Kathleen. Although we have been unable to find any case directly on point, it is clear that independent of the consequences of the intended felony, there is a danger of violence when one person in possession of the premises consents to a third person's entry for the purpose of injuring a person with joint possession of the premises. As the Supreme Court emphasized in *Gauze,* burglary laws are " 'based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to

---

[2]All section references are to the Penal Code.

[3]The possessory right protected by section 459 is the "right to exert control over property to the exclusion of others" or, stated differently, the "right to enter as the occupant of that structure." (*People* v. *Salemme, supra,* 2 Cal.App.4th at pp. 779, 781.)

perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed, then, not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous to personal safety.' Section 459, in short, is aimed at the danger caused by the unauthorized entry itself." (*People* v. *Gauze, supra,* 15 Cal.3d at p. 715, quoting *People* v. *Lewis* (1969) 274 Cal.App.2d 912, 920 [79 Cal.Rptr. 650]; *People* v. *Nguyen* (1995) 40 Cal.App.4th 28, 32 [46 Cal.Rptr.2d 840].)[4]

The case Clayton relies on to support his position is factually inapposite. In *People* v. *Superior Court (Granillo)* (1988) 205 Cal.App.3d 1478 [253 Cal.Rptr. 316], the police hired Cantu as an undercover officer, installed him in an apartment, and let it be known that he was available to purchase stolen property at that location. As intended, Granillo heard that Cantu wanted to buy stolen property, telephoned Cantu to say he had some personal property to sell, and asked if Cantu was interested. At Cantu's request, Granillo brought some things to the apartment, entered, told Cantu they were stolen goods, and offered to sell them to Cantu. The deal was completed and Granillo was ultimately arrested and charged with burglary. Granillo's motion to dismiss was granted and the People filed a petition for a writ of mandate. (*Id.* at pp. 1480-1481.) The Fifth District denied the petition, holding that consent to enter is vitiated by the defendant's felonious intent only when the "occupant who gives a consent to entry is either unaware of the visitor's felonious intent . . . or, if aware of the felonious intent, the occupant does not endorse it . . . ." (*Id.* at p. 1484.) Since there was something more than uninformed consent in *Granillo*—because Cantu was fully aware of Granillo's intent to sell stolen property and Granillo, in turn, "knew Cantu was aware of the felonious purpose and was indeed interested in buying stolen property"—there was a consensual entry and, therefore, no burglary. (*Id.* at p. 1485.) In *Granillo*, the apartment was possessed by only

---

[4]In *People* v. *Pendleton* (1979) 25 Cal.3d 371, 382 [158 Cal.Rptr. 343, 599 P.2d 649], the Supreme Court explained its earlier holding in *Gauze* this way: "The defendant in *Gauze* was convicted of burglary predicated upon his entry into his own apartment with intent to assault his roommate. The question presented was whether the defendant could be guilty of burglarizing his own home. We answered this question in the negative on the ground that one has an unconditional right to enter his own home, even for a felonious purpose. *We did not overrule existing authority upholding burglary convictions in which there was consensual entry. The law after Gauze is that one may be convicted of burglary even if he enters with consent, provided he does not have an unconditional possessory right to enter.*" (Italics added.) *Pendleton*'s facts are not like any of the other relevant cases, and the consent issue was raised there only because the defendant, who was convicted of burglary, kidnapping and rape after he entered an apartment occupied by two women, had asked for but was denied instructions on the lesser included offense of "unauthorized entry" within the meaning of section 602.5. (*People* v. *Pendleton, supra,* 25 Cal.3d at p. 381.)

one person (Cantu, the person who gave consent to enter) and both actors—Cantu and Granillo—knew about Granillo's felonious intent. In *Granillo,* Cantu's entry did not create an independent danger of violence. In our case, the house was possessed by two people (Richard and Kathleen), and only Richard (the person who gave consent to enter) knew about Clayton's felonious intent to murder Kathleen, who did not consent to the entry.

*Gauze, Granillo* and the other cases we have found are factually distinguishable from the case now before us—where one of two persons with a joint right to possession of the same premises (Richard) has given consent to a third person (Clayton) to enter the premises to commit a felony upon the other person with the joint right to possession (Kathleen). (E.g., *People* v. *Barry* (1892) 94 Cal. 481, 483 [29 P. 1026] [a defendant who enters a store with the intent to steal enters without invitation because the implied invitation is to enter for legal purposes only]; *People* v. *Descheneau* (1921) 51 Cal.App. 437 [197 P. 126] [a defendant who hid in a trunk to gain entry to a storage vault was properly convicted of burglary notwithstanding that the vault's proprietor knew of the plan, because the proprietor did not endorse the plan]; *People* v. *Thomas* (1977) 74 Cal.App.3d 320, 323 [141 Cal.Rptr. 340] [an entry into a shop for the purpose of carrying out the owner's instructions to take away merchandise is not a burglary]; *People* v. *Nunley* (1985) 168 Cal.App.3d 225, 231-232 [214 Cal.Rptr. 82] [a defendant who gained entry to the common area of an apartment building with the intent to break into an apartment was properly convicted of burglary notwithstanding that the common area was open to the public, because he did not have an unconditional possessory right to enter the area owned by the landlord]; *People* v. *Salemme, supra,* 2 Cal.App.4th at pp. 778-782 [a defendant who entered the owner's house with the owner's consent and with intent to sell him fraudulent securities was properly convicted of burglary because defendant did not have an unconditional possessory right to enter as an occupant and because the owner did not know of or endorse defendant's felonious intent].)

 We return to the point at which we began, which is the Supreme Court's holding that our burglary laws exist to punish the dangers to personal safety "created by the usual burglary situation"—the danger that the intruder will harm the occupant in attempting to gain entry to perpetrate the intended crime or in attempting to escape, or that the occupant will react in anger or panic and thus create more violence. (*People* v. *Gauze, supra,* 15 Cal.3d at p. 715.) Clayton's entry into Kathleen's house created precisely that type of danger, and the fact that Richard consented to Clayton's entry and knew about Clayton's felonious intent did not give Clayton an unconditional possessory right to enter for any purpose, and certainly not for the

purpose of injuring Kathleen, who did not know of or endorse Clayton's intent.[5] (*People* v. *Salemme, supra,* 2 Cal.App.4th at p. 781; *People* v. *Felix* (1994) 23 Cal.App.4th 1385, 1398 [28 Cal.Rptr.2d 860] [there must be evidence of informed consent to enter coupled with the intruder's knowledge that "the occupant" is aware of the intruder's felonious purpose and does not challenge it]; cf. *People* v. *Gauze, supra,* 15 Cal.3d at p. 716, fn. 5.) This is not a case where the defendant entered his own home or where the consent to enter has been given by the person who is the object of the intended felony. This is not a case of punishing a defendant twice for the same crime. The burglary conviction is therefore proper.

### DISPOSITION

The judgment is affirmed.

Ortega, Acting P. J., and Masterson, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 30, 1998.

---

[5]Of course, the fact that the intended felony is one that is usually violent (such as murder) does not prevent a conviction of burglary when the other elements of section 459 are proved.