Filed 1/19/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B262129 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA061918) |
| v. | |
| GRACE VARGAS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Eric P. Harmon, Judge.  Reversed.

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez and Andrew S. Pruitt, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

## INTRODUCTION

"On November 4, 2014, voters enacted Proposition 47, 'The Safe Neighborhoods and Schools Act.'  It was intended to 'ensure that prison spending is focused on violent and serious offenses, to maximize alternatives for nonserious, nonviolent crime, and to invest the savings generated from this act into prevention and support programs in K-12 schools, victim services, and mental health and drug treatment.'  (Ballot Pamp., Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 2, p. 70.)  To that end, Proposition 47 reduced most possessory drug offenses and thefts of property valued at less than $950 to straight misdemeanors and created a process for persons currently serving felony sentences for those offenses to petition for resentencing for misdemeanors.  (See Couzens & Bigelow, Proposition 47 'The Safe Neighborhoods and Schools Act' (Aug. 2015) p. 6 . . . .)" (*People v. Buycks* (2015) 241 Cal.App.4th 519, 521.)

Penal Code section 459.5[1] was among the provisions added by Proposition 47.  It reduces certain second degree burglaries to misdemeanors by defining them as "shoplifting," that is, "entering a commercial establishment with the intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950)."  (§ 459.5, subd. (a).)  In this case, the trial court refused to reduce appellant Grace Vargas's second degree burglary conviction to a misdemeanor because she entered a check cashing establishment with the intent to use a forged check for $148, not to commit what the court commonly understood as shoplifting—the entry into a retail establishment to steal displayed merchandise, or in the words of the court, "going into[, e.g.,] Target with the intent to commit a theft."

Appellant argues this interpretation is too narrow, and her entry into the check cashing establishment with the intent to commit theft by false pretenses satisfies the "intent to commit larceny" element of section 459.5 and qualifies her for resentencing. Respondent disagrees, and urges us to limit section 459.5 to the "common" understanding

---

[1]     All undesignated statutory citations are to the Penal Code unless otherwise noted.

of shoplifting, which in respondent's view is the "unauthorized entry into a retail establishment, while the establishment is open during regular business hours, with the intent to steal openly-displayed merchandise valuing not more than $950." Alternatively, respondent urges us to follow *People v. Gonzales* (2015) 242 Cal.App.4th 35 (*Gonzales*), in which the Fourth District, Division One, recently held the "intent to commit larceny" element in section 459.5 cannot be satisfied by entering a commercial establishment with the intent to commit theft by false pretenses.

As we will explain, both respondent and, in our opinion, *Gonzales* interpret section 459.5 too narrowly. Certainly, the lay person might understand "shoplifting" to mean entering a retail store during regular business hours with the intent to steal displayed merchandise, as respondent urges. But that is not how the voters defined "shoplifting" in section 459.5; instead, they defined it as entering a commercial establishment during business hours with the "intent to commit larceny." Accepting respondent's narrow interpretation would require us to rewrite the statute, which we cannot do. Similarly, we disagree with *Gonzales* that the phrase "intent to commit larceny" excludes the intent to commit theft by false pretenses. Larceny is statutorily equated with "theft" (§ 490a), and "theft" is defined to include theft by false pretenses, that is, "knowingly and designedly, by any false or fraudulent representation or pretense, defraud[ing] any other person of money, labor or real or personal property." (§ 484, subd. (a).) In holding otherwise, *Gonzales* relied on *People v. Williams* (2013) 57 Cal.4th 776 (*Williams*), but we find *Williams* distinguishable because it involved the interpretation of the "felonious taking" element of *robbery*, not burglary. Instead, section 459.5 redefined certain second degree *burglaries*, and our high court has held "[a]n intent to commit theft by a false pretense or a false promise without the intent to perform will support a burglary conviction." (*People v. Parson* (2008) 44 Cal.4th 332, 354 (*Parson*), citing *People v. Nguyen* (1995) 40 Cal.App.4th 28, 30-31 (*Nguyen*).) Because respondent has not disputed that appellant entered the check cashing establishment with the intent to commit theft by false pretenses, she may qualify for resentencing. We therefore reverse.

3

## BACKGROUND

According to a police report of the incident, on February 23, 2013, appellant entered a Money Mart Check Cashing business in Bakersfield and attempted to cash a forged personal check in the amount of $148. An employee contacted the owner of the check, who had reported his checkbook stolen. Appellant was arrested and searched, yielding a methamphetamine pipe in her purse.

Appellant was charged in Kern County with felony second degree burglary (§ 460, subd. (b)), felony forgery of the $148 check (§ 470, subd. (d)), and misdemeanor possession of drug paraphernalia (Health & Saf. Code, former § 11364.1), as well as on-bail enhancements for the felony charges (Pen. Code, § 12022.1). Pursuant to a plea agreement, appellant pled guilty to the second degree burglary charge, and the other charges and enhancements were dismissed. She was sentenced to 16 months in custody plus 20 months of mandatory supervision.

Appellant's probation case was transferred to Los Angeles County. Thereafter, she violated probation, and, as part of those proceedings, she petitioned for resentencing pursuant section 1170.18, a provision added by Proposition 47, contending her second degree burglary conviction fell within the newly enacted section 459.5. The People responded that the check cashing business appellant entered was not a "commercial establishment" under section 459.5, and entry with the intent to commit forgery did not constitute shoplifting as it was now defined. The trial court agreed with the latter argument, reasoning that "shoplifting to me means what we all think shoplifting means, going into Target with the intent to commit a theft. [¶] I don't think it means . . . going into a check cashing establishment with the intent to commit forgery." The court believed there was "an extra element in forgery above and beyond the larceny and a theft," namely that, "if you're entering an establishment with the intent to commit a fraud in addition to the larceny, which is gaining property by the trick and by the writing, I don't think because of those extra elements, you're entitled to relief . . . ." The court denied the petition, revoked and reinstated probation, and sentenced appellant to 120 days in county jail. Appellant timely appealed.

4

## DISCUSSION

Appellant sought resentencing pursuant to section 1170.18, added by Proposition 47. "Under section 1170.18, a person 'currently serving' a felony sentence for an offense that is now a misdemeanor under Proposition 47, may petition for a recall of that sentence and request resentencing in accordance with the statutes that were added or amended by Proposition 47. (§ 1170.18, subd. (a).) A person who satisfies the criteria in section 1170.18 shall have his or her sentence recalled and be 'resentenced to a misdemeanor . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' (§ 1170.18, subd. (b).) Subdivision (c) of section 1170.18 defines the term 'unreasonable risk of danger to public safety,' and subdivision (b) of the statute lists factors the court must consider in determining 'whether a new sentence would result in an unreasonable risk of danger to public safety.' (§ 1170.18, subds. (b), (c).)" (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1092 (*Rivera*).)

As enacted by Proposition 47, section 459.5 redefines certain second degree burglaries as "shoplifting" if the value of the property involved is less than $950: "(a) Notwithstanding Section 459 [(the general burglary statute)], shoplifting is defined as entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950). Any other entry into a commercial establishment with intent to commit larceny is burglary. Shoplifting shall be punished as a misdemeanor, except that a person with one or more prior convictions for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290 may be punished pursuant to subdivision (h) of Section 1170. [¶] (b) Any act of shoplifting as defined in subdivision (a) shall be charged as shoplifting. No person who is charged with shoplifting may also be charged with burglary or theft of the same property." As the Legislative Analyst for Proposition 47 explained, "Under current law, shoplifting property worth $950 or less (a type of petty

5

theft) is often a misdemeanor. However, such crimes can also be charged as burglary, which is a wobbler. Under this measure, shoplifting property worth $950 or less would always be a misdemeanor and could not be charged as burglary." (Ballot Pamp., Gen. Elec. (Nov. 4, 2014) analysis of Prop. 47 by Legislative Analyst, p. 35.)

The issue here is the proper interpretation of section 459.5, and we apply the familiar principles of both statutory and initiative interpretation, which are identical. (*Rivera, supra*, 233 Cal.App.4th at p. 1099.) """The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]"' [Citation.] In the case of a provision adopted by the voters, 'their intent governs.' [Citation.] [¶] 'In determining such intent, we begin with the language of the statute itself.' [Citation.] We look first to the words the voters used, giving them their usual and ordinary meaning. "'If there is no ambiguity in the language of the statute, 'then . . . the plain meaning of the language governs.'" [Citation.] "But when the statutory language is ambiguous, 'the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes.'" [Citation.] [¶] In construing a statute, we must also consider "'the object to be achieved and the evil to be prevented by the legislation.'""" (*Id.* at pp. 1099-1100.)

Respondent argues the term "shoplifting" was not previously defined in the Penal Code, and it was commonly understood to "encompass the theft of openly displayed merchandise from retail establishments." (See, e.g., *People v. Gonzales* (1965) 235 Cal.App.2d Supp. 887, 892 [describing shoplifting as "the practice whereby customers enter a turnstile, have free access to all the shelves displaying wares and merchandise, and the proper payment for merchandise taken away from the store depends upon the customer properly declaring it at the check-out or cashier's stand"]; Black's Law Dict. (10th ed. 2014) p. 1590, col. 1 [defining shoplifting as "[t]heft of merchandise from a store or business; specif., larceny of goods from a store or other commercial establishment by willfully taking and concealing the merchandise with the intention of converting the goods to one's personal use without paying the purchase price."].)

6

According to respondent, the voters intended to incorporate this definition into section 459.5 when it passed Proposition 47. But respondent's position is at odds with the plain text of section 459.5. Whatever the common definition of shoplifting, the voters defined "shoplifting" in section 459.5 to mean entry into a commercial establishment during regular business hours with the "intent to commit larceny," not—in respondent's proposed revision of the statute—the "unauthorized entry into a retail establishment, while the establishment is open during regular business hours, with the intent to steal openly-displayed merchandise valuing not more than $950." Had the voters intended to adopt this understanding of shoplifting, we should be able to find some indication of that in the text. We have not. Instead, we would have to rewrite the statute to accept respondent's interpretation, which is beyond both our charge and our power as a judicial body.

Respondent advances two other arguments in support of this proposed definition of "shoplifting," neither of which is persuasive. First, respondent contends the voters' use of the undefined term "property" in section 459.5 must be contrasted with section 490.2, subdivision (a), also added by Proposition 47, which made certain theft offenses into petty theft when "the value of the *money, labor, real or personal property* taken" does not exceed $950. (Italics added.) In respondent's view, the difference between the two statutes means voters must have intended section 459.5 to cover theft of only personal property (i.e., merchandise), and not cash, intangible property, or real property, as in section 490.2. (See *In re Ethan C.* (2012) 54 Cal.4th 610, 638 ["When language is included in one portion of a statute, its omission from a different portion addressing a similar subject suggests that the omission was purposeful."].) But respondent's conclusion does not flow from the premise. While section 459.5 does not itself define the term "property," nothing suggests voters intended to limit the term to *personal* property. If they did, they would have used those words. Instead, as we will explain, section 459.5 refers to the intent to commit larceny, thereby incorporating the definition of "theft" in section 484, subdivision (a). That section defines theft by false pretenses as defrauding another person of "money, labor or real or personal property," the nearly identical

7

language in section 490.2. Thus, for the purposes of this case, any difference in the language of sections 459.5 and 490.2 is inconsequential.

Second, respondent contends the voters' use of the term "commercial establishment" in section 459.5 suggests a more narrow scope than traditional burglary in section 459, which includes many different types of structures, including "any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel," etc. As a general matter, we agree. But again, nothing suggests the voters intended the term "commercial establishment" to mean "*retail* establishment." And again, if they did, they would have used those words.[2]

Respondent further contends, even if we disagree with this narrow interpretation of "shoplifting," we may still affirm denial of appellant's petition by following *Gonzales*, which held the intent to commit theft by false pretenses did not constitute an "intent to commit larceny" as required by section 459.5. In that case, the petitioner had entered a bank and cashed two forged checks. He pled guilty to second degree burglary and later petitioned to reduce that offense to a misdemeanor pursuant to Proposition 47, arguing his offense fell within the definition of "shoplifting" in section 459.5. (*Gonzales, supra*, 242 Cal.App.4th at p. 37.) The court rejected his argument, finding he did not enter the bank with the "intent to commit larceny" because "larceny" requires a "'"trespassory taking," which is a taking *without* the property owner's consent,'" an element not present when the petitioner defrauded the bank using forged checks. (*Id.* at p. 39.) In coming to this conclusion, the court relied on our high court's decision in *Williams*, which involved the proper interpretation of the "felonious taking" requirement for robbery. According to *Williams*, because the "felonious taking" element of robbery must be *without* the consent of the property owner, and theft by false pretenses "involves the *consensual* transfer of possession as well as *title* of property," "theft by false pretenses cannot satisfy the

<hr>

**2**    Respondent has not renewed the argument made to the trial court that the check cashing establishment here does not fit the definition of "commercial establishment" in section 459.5, so we leave the precise contours of that term for another day.

8

'felonious taking' element of robbery." (*Williams, supra*, 57 Cal.4th at pp. 788-789.) Based on this reasoning, the court in *Gonzales* concluded: "As in *Williams*, the taking in this case was consensual. [The bank] consented to transferring title and possession of $250 to Gonzales. Gonzales used false representations that he was cashing valid checks made out to him to obtain the money from [the bank.] Relying on those representations, which the bank must have believed to be true, it consented to giving Gonzales the money. Larceny requires a taking *without* consent (*Williams, supra*, 57 Cal.4th at p. 788). That element was not satisfied in this case." (*Gonzales, supra*, 242 Cal.App.4th at pp. 39-40.) As we will explain, however, we think *Williams* is distinguishable and, as a result, we decline to follow *Gonzales*.

In *Williams*, the defendant used re-encoded payment cards to buy gift cards at a department store. After the defendant completed the transaction, he was confronted by security. He began to walk away and ignored security's requests to stop, and then he shoved one of the guards. He was convicted of several offenses, including robbery and theft. (*Williams, supra*, 57 Cal.4th at p. 779.) Tracing the common law roots of larceny and the "felonious taking" element of robbery, the court concluded "felonious taking" must be limited to theft by larceny, and it cannot be satisfied by theft by false pretenses. (*Id.* at pp. 781-789.) Because the robbery statute requires "'the *felonious taking* of personal property in the possession of another'" by force or fear, and "[t]he taking required in larceny, as in robbery, must be 'felonious,'" the court reasoned the California Legislature likely intended the phrase "felonious taking" in the robbery statute to share the same common law meaning as larceny. (*Id.* at pp. 786-787.) The court further noted larceny requires asportation, which makes larceny a continuing offense, whereas theft by false pretenses does not require asportation and ends at the moment title to the property is acquired. As a result, "a defendant who uses force or fear in an attempt to escape with property taken by larceny has committed robbery," but a theft by false pretenses "cannot become robbery by the defendant's later use of force or fear." (*Id.* at p. 787.) And theft by false pretenses involves the consensual transfer of possession and title of the property, so a defendant does not commit a "*trespassory* (nonconsensual) taking" required for

9

robbery, which was the reasoning the *Gonzales* court found controlling. (*Williams*, at pp. 788-789.)

Finally, the court rejected Justice Baxter's reliance on section 490a in his dissenting opinion, which provides: "Wherever any law or statute of this state refers to or mentions larceny, embezzlement, or stealing, said law or statute shall hereafter be read and interpreted as if the word 'theft' were substituted therefor." According to the majority, Justice Baxter's reasoning was as follows: "Section 490a says any law or statute that refers to or mentions larceny or stealing must be construed as meaning 'theft'; although the robbery statute (§ 211) does not expressly mention larceny or stealing, it refers to them indirectly through the words 'felonious taking,' which should be interpreted under section 490a as meaning 'theft,' a crime that includes theft by false pretenses. Therefore, the dissent concludes, the 'felonious taking' element in the robbery statute encompasses defendant's conduct in this case." (*Williams, supra*, 57 Cal.4th at p. 789.) The majority found his theory unpersuasive because it would require the court "to conclude that, by enacting section 490a, the Legislature intended to alter two of the substantive elements of robbery: asportation and a trespassory taking. [Citation.] But the 1927 legislation enacting section 490a and the theft consolidation statute (§ 484, subd. (a); Stats. 1927, ch. 619, § 1, p. 1046) left unchanged the elements of theft. [Citation.] We are not persuaded that the Legislature intended to alter the elements of *robbery*, to which section 490a makes no reference whatever, while also intending to leave intact the elements of *theft*, to which it explicitly refers. As this court said more than 80 years ago, 'the essence of section 490a is simply to effect a change in nomenclature *without disturbing the substance of any law*." (*Ibid.*)

Unlike *Williams*, this case involves section 459.5, which has its roots in *burglary*, not robbery, and *Williams* did not analyze the relationship between theft by false pretenses and burglary. (See *People v. Knoller* (2007) 41 Cal.4th 139, 154-155 ["'"It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court. An opinion is not authority for propositions not considered.'"'].) Instead, the Supreme Court held in *Parson* that burglary may be

10

satisfied by the intent to commit theft by false pretenses. (*Parson, supra*, 44 Cal.4th at p. 354 [holding that "[a]n intent to commit theft by a false pretense or a false promise without the intent to perform will support a burglary conviction" and finding substantial evidence to support burglary conviction when defendant entered victim's home intending to "'con'" her out of money].) *Parson* cited *Nguyen*, in which the Court of Appeal specifically held that the "'intent to commit grand or petit larceny'" element of burglary may be satisfied by entering a victim's house with the intent to pass worthless checks, which constituted theft by false pretenses. (*Nguyen, supra*, 40 Cal.App.4th at pp. 30-31.) The court explained: "[I]n 1927, the Legislature amended the larceny statute to define theft as including the crimes of larceny, embezzlement and obtaining property by false pretense. (Stats. 1927, ch. 619, § 1, p. 1046.) At the same time, the Legislature also enacted section 490a stating, '[w]herever any law or statute of this state refers to or mentions larceny, embezzlement, or stealing, said law or statute shall hereafter be read and interpreted as if the word "theft" were substituted therefor.' (Stats. 1927, ch. 619, § 7, p. 1047.) Thus, the Legislature has indicated a clear intent that the term 'larceny' as used in the burglary statute should be read to include all thefts, including 'petit' theft by false pretenses." (*Nguyen, supra*, at p. 31.)

Although the majority in *Williams* rejected Justice Baxter's similar reasoning in the context of robbery,[3] it did so largely because it did not believe the Legislature implicitly intended sections 484, subdivision (a) and 490a to affect the substantive elements of *robbery*, while leaving intact the elements of theft. (*Williams, supra*, 57 Cal.4th at p. 789.) That concern is not present here because, as enacted in 1872, the burglary statute used the phrase "'intent to commit grand or petit larceny'" (*People v. Farley* (2009) 46 Cal.4th 1053, 1119, fn. 26), and section 490a expressly refers to

---

**3**     Justice Chin analogized to *Nguyen* in his dissent in *Williams*. (*Williams, supra*, 57 Cal.4th at p. 796 [dis. opn. of Chin, J.].) The majority did not address that point.

11

larceny.[4]  Thus, because voters adopted the phrase "intent to commit larceny" in section 459.5, which mirrors the intent element in the general burglary statute (§ 459), and that phrase includes theft by false pretenses, we believe the voters intended section 459.5 to include theft by false pretenses.

Our conclusion is consistent with the voters' general intent behind Proposition 47. As noted, the initiative was designed to "ensure that prison spending is focused on violent and serious offenses, to maximize alternatives for nonserious, nonviolent crime, and to invest the savings generated from this act into prevention and support programs in K-12 schools, victim services, and mental health and drug treatment."  (Ballot Pamp., Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 2, p. 70.)  To achieve that end, the measure "[r]equire[s] misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft and drug possession . . . ."  (Ballot Pamp., Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 3, p. 70.)  Appellant's second degree burglary conviction based on using a forged check to obtain $148 is unquestionably a nonviolent offense, so reducing it to a misdemeanor certainly serves the purposes behind Proposition 47.  We are confident the voters would agree, given Proposition 47 also reduced the offense of forgery involving less than $950 from a wobbler to a straight misdemeanor.  (§ 473, subd. (b).)

Respondent contends our interpretation of section 459.5 "is so expansive as to largely defeat the purpose of burglary laws, an absurd result the voters clearly did not intend."  Respondent then provides some examples:  What about a person who enters a restaurant and sneaks into the manager's office to steal $900 from the safe?  What about a person who enters the 24-hour supermarket and breaks into the locked pharmacy to steal drugs?  What about a person who enters the locker room of a private club and steals

---

[4]     The court in *Williams* also recognized burglary could be based on theft by false pretenses in a footnote responding to Justice Baxter's concern that a defendant could no longer be convicted felony-murder robbery in light of the majority's opinion:  "[I]f a defendant enters a store with the intent to commit theft by false pretenses (as defendant did here), and if that defendant, while fleeing, kills a store employee, that defendant can be convicted of felony-murder *burglary*."  (*Williams, supra*, 57 Cal.4th at p. 789, fn. 4, italics added.)

personal items from the lockers? In respondent's view, these acts would give rise to misdemeanor liability only, even though they involve potentially dangerous unauthorized entries not present in traditional shoplifting. Of course, none of these cases is before us. We also doubt these acts would fall within our reading of section 459.5. For instance, private areas of commercial establishments may not qualify as an "establishment . . . open during regular business hours" as required by section 459.5. (Cf. *People v. Mackabee* (1989) 214 Cal.App.3d 1250, 1257-1258 [private office separated from public area by waist-high counter was "room" within meaning of burglary statute].) And even if some of these offenses might be punished as misdemeanors in future cases, the *voters* elected to do so when they defined shoplifting to include the intent to commit *any* larceny.[5]

We understand respondent's point that burglary laws are ""'"based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation— the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed, then, not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous to personal safety." Section 459, in short, is aimed at the danger caused by the unauthorized entry itself.'" (*People v. Clayton* (1998) 65 Cal.App.4th 418, 421-422.) But the voters clearly recognized that not *all* burglaries are created equal when it comes to the potential for violence. By ensuring shoplifting is now charged as a misdemeanor when the value of the property taken is less than $950, the voters recognized it often does *not* involve the

---

[5]     At oral argument, respondent suggested our interpretation would prevent defendants from being charged with *any* felony if the misdemeanor theft by false pretenses involves violence. Respondent's contention is erroneous because a defendant who enters a commercial establishment intending to commit misdemeanor theft by false pretenses and uses violence when leaving could still be charged with two crimes—a misdemeanor theft by false pretenses and either misdemeanor or felony assault, depending on the facts (i.e., using a deadly weapon or inflicting great bodily injury).

risk of violence.  The same is true for appellant's actions here, which involved a nonviolent entry into a check cashing establishment during business hours intending to use a forged check to obtain $148.

## DISPOSITION

The judgment is reversed.  There is no dispute appellant's second degree burglary involved less than $950, so she would be entitled to resentencing unless the trial court determines in its discretion that resentencing appellant would "pose an unreasonable risk of danger to public safety."  (§ 1170.18, subd. (b); see *People v. Contreras* (2015) 237 Cal.App.4th 868, 892.)  Because the trial court did not reach that question, we remand this matter for the trial court to make that determination in the first instance.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


RUBIN, J.


14