Filed 5/11/16  P. v. Oregon CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B266631 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA134653) |
| v. | |
| PETE DAVID OREGON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Yvonne T. Sanchez, Judge.  Reversed in part and affirmed in part with directions.

Elizabeth K. Horowitz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez and Andrew S. Pruitt, Deputy Attorneys General, for Plaintiff and Respondent.

**INTRODUCTION**

Defendant and appellant Pete David Oregon (defendant) challenges the denial of his Proposition 47 petition to reduce his felony burglary conviction to misdemeanor shoplifting. Proposition 47, the Safe Neighborhoods and Schools Act, enacted Penal Code section 459.5, which redefined certain second degree commercial burglaries as "shoplifting" if the value of the property taken or intended to be taken did not exceed $950.[1] Proposition 47 also enacted section 1170.18, which provides in subdivisions (a) and (f) that a person convicted of a felony, who would have been guilty of a misdemeanor under enumerated provisions, including section 459.5, may apply to the trial court that entered the judgment of conviction to have the felony conviction designated a misdemeanor, and if currently serving a sentence for the felony, to be resentenced.

Defendant contends that he met his initial burden to show that the value of property involved was less than $950, and that the trial court improperly considered the facts underlying a count dismissed pursuant to a plea agreement, in order to find that the People had overcome defendant's showing. Defendant also contends that the facts of the dismissed count were insufficient to overcome defendant's showing. Respondent contends that, as a matter of law, defendant's burglary conviction does not qualify for reduction under Proposition 47. Alternatively, respondent argues that reversal would require remand for the trial court to assess whether defendant posed an unreasonable risk of danger to public safety, or to allow the People to withdraw from the plea agreement in order to prosecute defendant on all charges. We find merit in defendant's contentions and reject respondent's contentions. We thus reverse the order denying the petition.

**BACKGROUND**

In 2014, defendant was charged with the following felonies: count 1, possession of a controlled substance, in violation of Health and Safety Code section 11377, subdivision (a); count 2, second degree commercial burglary, in violation of section 459;

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

and count 3, theft of access card account information, in violation of section 484e, subdivision (d).[2] The complaint alleged in count 2 that on or about December 17, 2013, defendant entered a commercial building occupied by a Marshall's store with the intent to commit larceny and any felony. Thereafter defendant entered into a plea agreement, under which he pled no contest to counts 1 and 2, and count 3 was dismissed. The trial court placed defendant on formal probation for three years on stated terms and conditions, including three years in county jail.

In 2015, defendant filed an application pursuant to Proposition 47 for reduction of his convictions to misdemeanors (Proposition 47 petition). The first of two hearings on the petition was held May 19, 2015, at the same time as a probation violation hearing. The prosecutor conceded that defendant was "definitely eligible" to have count 1 reduced to a misdemeanor, but objected to granting relief as to count 2. As to count 1 the trial court agreed, found defendant eligible and suitable for relief under Proposition 47, and reduced that offense to a misdemeanor.

With regard to count 2, the trial court heard the argument of counsel and reviewed the probation report, noting that defendant had admitted buying $137.94 worth of merchandise at Marshall's with a stolen gift card.[3] According to the probation report, defendant was arrested for a traffic violation on the same day as the Marshall's incident. The deputy sheriff searched defendant and found 2.81 grams of methamphetamine and nine gift or debit cards which did not belong to defendant. The prosecutor explained to the court that the dismissed count 3 was based upon defendant's possession of the nine

[2]     Section 484e, subdivision (d), provides: "Every person who acquires or retains possession of access card account information with respect to an access card validly issued to another person, without the cardholder's or issuer's consent, with the intent to use it fraudulently, is guilty of grand theft."

[3]     Ordinarily, a probation report is not considered reliable evidence of eligibility for recall of sentence, and may be excluded. (See *People v. Burnes* (2015) 242 Cal.App.4th 1452, 1457-1459.) However, the trial court considered it without objection. In addition, the parties argued the facts taken from the report, and on appeal both parties rely on the same facts. We thus assume that both sides at least tacitly agreed to consider the probation report.

stolen cards which, according to the police report, included several "regular cash debit cards" with limits of over $5,000. The prosecutor argued that defendant entered the store with all the stolen cards, and although he chose to make a smaller purchase, the potential loss to the store was more than $950. Unconvinced that count 2 qualified for a Proposition 47 reduction to a misdemeanor, the court continued the case to the following month for further hearing, and ordered a supplemental probation report.

At the second hearing, no additional evidence was presented by either party. The trial court heard the argument of counsel, read and considered the case file, including the supplemental probation report. Defense counsel represented that the value of the merchandise defendant had purchased with a stolen card was $154.45. The prosecution did not disagree with that amount, but argued that defendant entered the Marshall's store in possession of all nine cards relating to count 3, and that the cards had a total value of over $10,000, from which the court could infer that defendant's intent when he entered the store was to steal more than $950 in merchandise. Defense counsel objected to consideration of the facts underlying count 3, but the trial court agreed with the prosecution and found that the amount in issue as to count 2 exceeded $950, making it ineligible for reduction to a misdemeanor. The court denied the petition and reinstated probation on the same terms and conditions.

Defendant filed a timely notice of appeal from the order denying the petition.

## DISCUSSION

### I. Theft by false pretenses and larceny

Proposition 47 added the new crime of shoplifting, defined as "entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950)." (§ 459.5, subd. (a).) Respondent contends that the order denying the petition as to count 2 must be affirmed because defendant's intent upon entering Marshall's was to commit theft by false pretenses, whereas shoplifting requires an intent to commit larceny. Respondent reasons that the term "larceny" in section 459.5 was not intended to include theft by false

4

pretenses, because larceny requires a trespassory taking, meaning without the owner's consent, whereas theft by false pretenses is accomplished with the owner's consent, albeit obtained by fraud.

Respondent's argument relies on the only published case which supports this theory; however, as the California Supreme Court has since granted a petition for hearing in that case, no published authority remains to support respondent's contention. (See *People v. Gonzales* (2015) 242 Cal.App.4th 35, review granted February. 17, 2016, S231171.) *Gonzales* relied on *People v. Williams* (2013) 57 Cal.4th 776 (*Williams*), in which the California Supreme Court interpreted the "felonious taking" element of robbery, after reviewing the historical definitions of theft crimes, including *common law* larceny and theft by false pretenses. (See *Williams, supra*, at pp. 781-785.)[4] Although we find some of the court's historical analysis in *Williams* helpful in demonstrating that respondent's contention is without merit, we find *Williams* to be distinguishable as it involved a conviction for robbery.

As respondent argues, a trespassory taking "is a taking without the property owner's consent. [Citation.]" (*Williams, supra*, 57 Cal.4th at p. 788.) However, consent may be vitiated by fraud; for example, at common law, larceny by trick was deemed to be a trespassory taking, as the owner's consent was procured by fraud. (*Id.* at pp. 783-784.) In 1927, the California Legislature enacted section 484, subdivision (a), which consolidated larceny, false pretenses, and embezzlement into the single crime of "theft." (*Williams, supra*, at p. 785; Stats. 1927, ch. 619, § 1.)[5] Now, larceny by trick and theft

---

**4**     Two other recently published cases have distinguished *Williams* and rejected the reasoning of *Gonzales*. Petitions for review in the Supreme Court have been granted in both cases. (See *People v. Triplett* (2016) 244 Cal.App.4th 824, 833-834, review granted April 27, 2016, S233172; *People v. Vargas* (2016) 243 Cal.App.4th 1416, 1420-1421, review granted Mar. 30, 2016, S232673.)

**5**     Section 484, subdivision (a), states in relevant part: "Every person who shall feloniously steal, take, [or] carry . . . away the personal property of another, . . . or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money . . . or personal property . . . is guilty of theft."

5

by false pretenses are the same "larcenous" crime; the only difference is that larceny by trick is committed by the fraudulent acquisition of only the *possession* of property, whereas theft by false pretenses results in the fraudulent acquisition of both possession and title. (*People v. Ashley* (1954) 42 Cal.2d 246, 258-259; see *Williams*, *supra*, at p. 784.)

In 1927 the Legislature also enacted section 490a. (*People v. Nguyen* (1995) 40 Cal.App.4th 28, 31; Stats. 1927, ch. 619, § 7.) The California statute provides "[w]herever any law or statute of this state refers to or mentions larceny, embezzlement, or stealing, said law or statute shall hereafter be read and interpreted as if the word 'theft' were substituted therefor." (§ 490a.) This means that when the word "larceny" is used in a statute such as section 459, it must "now be read and interpreted as if the word 'theft' were substituted." (*People v. Dingle* (1985) 174 Cal.App.3d 21, 30; see also *People v. Parson* (2008) 44 Cal.4th 332, 354.) "Thus, the Legislature has indicated a clear intent that the term 'larceny' as used in the burglary statute should be read to include all thefts, including 'petit' theft by false pretenses." (*People v. Nguyen*, *supra*, at pp. 30-31.)[6]

The electorate "is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted. [Citation.]" (*People v. Weidert* (1985) 39 Cal.3d 836, 844.) And "it is not to be presumed that the [enacting body] intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication. [Citations.]" (*County of Los Angeles v. Frisbie* (1942) 19 Cal.2d 634, 644.) Further, as the language of a

---

[6]     At oral argument, respondent cited *People v. Darling* (1964) 230 Cal.App.2d 615, to support the argument that larceny does not include theft by false pretenses for purposes of section 459.5. In *Darling* the appellate court held that welfare fraud amounted to theft by false pretenses rather than embezzlement; and that section 490a should not be construed to eliminate the punishment and limitations exceptions to embezzlement of public funds under sections 799 and 800. (*Darling*, at pp. 617-620.) As the facts in *Darling* were exceptional, it has limited application. The *Darling* court did not consider whether theft by false pretenses was larceny for purposes of the burglary statute, as did the court in *People v. Nguyen, supra*, 40 Cal.App.4th at page 31, which provides the better analogy for purposes of applying section 459.5.

statute is construed in the context of the overall statutory scheme in which it is found, a word that appears in different places within a statutory scheme is generally presumed to have the same meaning each time it is used. (*People v. Gray* (2014) 58 Cal.4th 901, 906.) There is nothing in the language of section 459.5 or the ballot materials cited by respondent to indicate that the electorate intended to return to the common law meaning of larceny as not including theft by false pretenses. Indeed during the pendency of this matter the Fourth Appellate District published *People v. Root* (2016) 245 Cal.App.4th 353 (petn. for review pending, petn. filed Apr. 6, 2016) which concluded "Petty theft by false pretenses is precisely the type of nonserious, nonviolent crime Proposition 47 was aimed toward affecting. . . . [T]heft by false pretenses is less likely to involve violence than a situation where a person has the intention to steal openly displayed merchandise from a store. To provide misdemeanors for that type of theft, but not for theft by false pretenses, would contradict the voters' general intent of requiring misdemeanors for nonserious, nonviolent theft crimes." (*Id*. at p. 360.) We thus conclude that in section 459.5, as in section 459, an intent to commit larceny means an intent to commit theft, which includes theft by false pretenses.

## II. *Harvey*[7] objection

"The crime of shoplifting has three elements: (1) entry into a commercial establishment, (2) while the establishment is open during regular business hours, and (3) with intent to commit larceny of property valued at $950 or less. (§ 459.5, subd. (a).)" (*In re J.L.* (2015) 242 Cal.App.4th 1108, 1114.) Neither party contends that Marshall's was not a commercial establishment or that it was not open during regular business hours when defendant purchased merchandise with a stolen gift card. Only the third element was in dispute.

A defendant who seeks to have a second degree burglary conviction reduced to misdemeanor shoplifting bears the initial burden to show that the value of the items taken was less than $950. (*People v. Rivas-Colon* (2015) 241 Cal.App.4th 444, 449-450;

---

[7]     *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*).

*People v. Sherow* (2015) 239 Cal.App.4th 875, 879-880.) Although respondent agrees that the amount *taken* was less than $950, respondent argues that the value of the property defendant *intended* to take was the deciding factor, and that evidence of the nine payment cards found in defendant's possession at another time and location proved that intent. The parties agreed that defendant's possession of the nine cards was the basis of the charge in count 3, theft of access card account information, in violation of section 484e, subdivision (d), and that count 3 had been dismissed pursuant to a plea agreement.

Defendant contends that the court's reliance on facts underlying the dismissed count was improper under the principles expressed in *Harvey*. In *Harvey*, the California Supreme Court held that where an unrelated count is dismissed in consideration of defendant's agreement to plead guilty to another count or counts, it would be "improper and unfair to permit the sentencing court to consider any of the facts underlying the dismissed count . . . for purposes of aggravating or enhancing defendant's sentence. . . . Implicit in such a plea bargain . . . is the understanding (in the absence of any contrary agreement) that defendant will suffer no adverse sentencing consequences by reason of the facts underlying, and solely pertaining to, the dismissed count." (*Harvey, supra*, 25 Cal.3d at p. 758.) The contrary agreement is now popularly called a "*Harvey* waiver." (*People v. Weatherton* (2015) 238 Cal.App.4th 676, 678.)

Prior to the trial court's ruling, defense counsel asked the court to look at the allegations of count 3, and pointed out the absence of a "*Harvey* waiver" as part of the plea. Our review of defendant's written plea agreement and the court's minutes supports defense counsel's argument to the trial court that the guilty plea in 2014 did not include a *Harvey* waiver. Courts have extended the *Harvey* rule beyond sentencing to prohibit consideration of dismissed counts when fixing the conditions of probation (*People v. Beagle* (2004) 125 Cal.App.4th 415, 417-418, 421); and under circumstances more analogous to a Proposition 47 case, when deciding whether to recall a third strike sentence under Proposition 36. (*People v. Berry* (2015) 235 Cal.App.4th 1417, 1425; see § 1170.126.) One court more recently upheld a trial court's reliance on the facts underlying a dismissed count to deny a Proposition 47 petition, because there had, in fact,

been a *Harvey* waiver in that case.  (See *People v. Hoffman* (2015) 241 Cal.App.4th 1304, 1310-1311.)

The underlying facts of a dismissed count are considered unrelated and subject to the *Harvey* prohibition, unless they are "transactionally related" to the relevant count. (*Harvey*, *supra*, 25 Cal.3d at p. 758.)  The facts of one count are transactionally related to those of another when the charged offenses arose out of the same incident or were part of the same transaction; for example, one count alleging an offense committed with the use of a firearm, and the other count alleging illegal possession of the same firearm.  (*People v. Beagle, supra*, 125 Cal.App.4th at p. 421.)  A tenuous connection will not justify reliance on the underlying facts of a dismissed count; there must be "facts from which it could at least be inferred that some action of the defendant giving rise to the dismissed count was also involved in the admitted count."  (*Id.* at p. 421; see, e.g., *People v. Bradford* (1995) 38 Cal.App.4th 1733, 1739 [firearms found on property devoted entirely to illegal drug operation].)  On the other hand, a *coincidentally* simultaneous possession of multiple items does not make the possession of each item transactionally related.  (See, e.g., *People v. Berry*, *supra*, 235 Cal.App.4th at pp. 1421-1422, 1426 [possession of firearm, fraudulent check, and forged driver's license]; *People v. Beagle*, *supra*, at pp. 417-418, 421-422 [possession of nunchakus and drugs in different parts of house]; *People v. Berry* (1981) 117 Cal.App.3d 184, 197 [possession of gun in vehicle, absent showing that defendant used the gun to obtain or retain possession of the vehicle].)

Respondent does not contend that defendant's *Harvey* objection was inadequate or not understood by the trial court.  Indeed, respondent disregards defendant's *Harvey* contention altogether, and makes the same argument that the prosecutor made below: that although the value of the property *taken* was less than $950, the facts of the dismissed count strongly suggested that at the time defendant *entered* the store, he intended to steal more than $950 in merchandise; thus his crime was burglary, not shoplifting.  Respondent's contention begs the question whether the trial court properly relied on such facts.

9

The facts underlying count 3 appeared in the probation report, which reported that the nine stolen cards were found in defendant's possession on the same day as the incident at Marshall's. In addition, the prosecutor represented to the court that according to the police report, some of the cards were debit cards with limits of more than $5,000. Although the possession of stolen payment cards in one location presents facts similar to the possession of stolen gift cards by the same person at another location, the question becomes whether the record shows a sufficient connection to both incidents, such that the two incidents were *transactionally* related. (See *Beagle*, *supra*, 125 Cal.App.4th at pp. 421-422.) The cards with limits over $5,000 were debit cards, whereas the cards used in Marshall's were gift cards. While it can reasonably be inferred that defendant intended to use some or all of the stolen debit cards somewhere and at some time, we have found no support in the record for respondent's conclusion that when defendant entered Marshall's, he possessed or intended to use any card other than Marshall's gift cards.

It appears that the Marshall's incident was earlier in the day than the traffic stop, as defendant's admission that he had stolen from Marshall's was made to detectives after the traffic stop. However, the record is silent as to whether defendant obtained possession of the nine cards before or after Marshall's, or even how much time elapsed between the traffic stop and when defendant made the purchases in Marshall's. As the stolen debit cards recovered from the traffic stop were not shown to have been in defendant's possession when he entered Marshall's, they were not shown to be involved in the Marshall's incident. Thus the fact of possession in count 3 was not *transactionally* related to count 2, and we conclude that the trial court improperly relied on the facts underlying count 3.

Regardless, we agree with defendant that, assuming that the trial court properly considered the facts of count 3 to find that two of the nine cards had been issued with $5,000 limits, and to infer that defendant was in possession of all nine cards when he entered Marshalls, it remains speculative whether defendant intended to buy more than he did buy, particularly without some evidence that he attempted to or was prevented from so doing. Moreover, count 3 was based solely upon defendant's *possession* of the nine

10

cards, not their value, and there was no suggestion that any of the cards, even those with a $5,000 limit, had a sufficient balance or combined balance to permit defendant to purchase more than $950 worth of merchandise. Given such circumstances, the evidence was insufficient to overcome defendant's initial showing that the value involved in the offense was less than $950.

## III. Remand

Respondent contends that in the event of reversal, we should remand to allow the trial court to make a determination pursuant to section 1170.18, subdivision (b), which provides that where an offense qualifies for reduction to a misdemeanor, the trial court must grant the defendant's petition, "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." An unreasonable risk of danger to public safety is defined in section 1170.18, subdivision (c), as an unreasonable risk that the defendant will commit one of the violent felonies specified in section 667, subdivision (e)(2)(C)(iv).

Upon reversal of the denial of a Proposition 47 petition, the matter should be remanded to the trial court to exercise its discretion to make the public safety determination, *if it has not already done so*. (Cf. *T.W. v. Superior Court* (2015) 236 Cal.App.4th 646, 649 (*T.W.*).) Here, at the first hearing on the Proposition 47 petition, the trial court found defendant eligible to have count 1 reduced to a misdemeanor, and further, found him "suitable" for relief under Proposition 47. In the second hearing, the trial court reinstated defendant's probation on the same terms and conditions. From this record, it appears that the trial court did exercise its discretion to assess the risk of danger to public safety posed by defendant, and found no unreasonable risk. Remand is thus unnecessary.

Respondent also contends that reversal requires remand to give the prosecution the opportunity to seek withdrawal from the plea agreement and reinstatement of the original three charges. Respondent rests this entire argument on *Harris v. Superior Court* (2015)

11

242 Cal.App.4th 244, review granted February 24, 2016, S231489. As the California Supreme Court has granted a petition for review in that case, we do not consider it.[8]

In accordance with the plea agreement in this case, defendant admitted two felonies and the third was dismissed. The trial court later granted in part defendant's Proposition 47 petition, and reduced count 1, a felony, to a misdemeanor. Respondent argues that removing the remaining felony from defendant's record, thereby negating the court's option to impose a felony sentence if defendant violates his probation, would fundamentally alter the character of the plea bargain.

Remand to give the People the opportunity to apply to vacate the plea agreement would be a futile and wasteful exercise, as the trial court would be compelled to deny such a motion on either of two grounds. First, we observe that the People's bargained-for benefit was altered when the trial court reduced count 1 to a misdemeanor. At that time, the prosecutor did not oppose granting the petition as to count 1, nor was there a motion to vacate the plea agreement, or take an appeal from the order. As the court's order as to count 1 is final, it is too late to reinstate the original three charges. Respondent has cited no authority which would permit the People to withdraw from *part* of a plea bargain, which, in any event, would result in a modification of the agreement, not in vacating it. Once a plea agreement has been accepted by the parties and the court, it may not be modified without the consent of both parties. (*People v. Martin* (2010) 51 Cal.4th 75, 80.)

Moreover, "the general rule in California is that the plea agreement will be "'deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy. . . .'" [Citation.]" (*Doe v. Harris* (2013) 57 Cal.4th 64, 65.)

---

[8] Petitions for review have also been granted in three recently published appellate court opinions which have expressly disagreed with *Harris*. (See *People v. Perry* (2016) 244 Cal.App.4th 1251, 1259, review granted April 27, 2016, S233287; *People v. Brown* (2016) 244 Cal.App.4th 1170, 1179, review granted April 27, 2016, S233274; *People v. Gonzalez* (2016) 244 Cal.App.4th 1058, 1072-1073, review granted April 27, 2016, S233219.)

The parties "are deemed to know and understand that the state, . . . subject to the limitations imposed by the federal and state Constitutions, may enact laws that will affect the consequences attending the conviction entered upon the plea." (*Id*. at p. 70.) At the time of the plea, the parties may affirmatively agree, such as by including a *Harvey* waiver, that the consequences of the plea will remain fixed despite changes to the relevant law. (*Doe, supra*, at pp. 70-71; see *Harvey supra*, 25 Cal.3d 758.) We find no evidence in this record to suggest that the parties understood or agreed that the plea agreement would not be affected by changes in the law that benefitted one of the parties.

Second, section 1170.18, subdivision (a), which expressly provides for the reduction of certain felonies to misdemeanors whether the defendant was convicted by trial *or plea*, applies to convictions resulting from plea agreements. (*T.W.*, *supra*, 236 Cal.App.4th at pp. 652-653.) In *T.W.*, the trial court denied the minor's Proposition 47 petition on the ground that there had been a negotiated plea bargain where one felony count had been dismissed in exchange for the minor's admission to a second felony count. (*Id*. at pp. 649-651.) The appellate court reversed, holding that "the trial court erred by engrafting a plea agreement disqualifier into the statute." (*Id*. at pp. 651-652.) There is no *automatic* disqualifier in the language of section 1170.18, but only the discretionary finding that the defendant pose an unreasonable risk of danger to public safety; and the language of the statute does not suggest any other discretionary disqualifier or any intent to exclude convictions obtained by plea agreement. (*Id*. at p. 652; § 1170.18, subd. (c).) To ascertain and effectuate the intent of the voters, the *T.W.* court looked to Proposition 47 ballot materials, noting that the proponents of the initiative argued that the measure would stop wasting prison space, and would focus the resources of law enforcement less on the offenses subject to reduction to misdemeanors, and more on violent and serious crimes. (*T.W.*, *supra*, at p. 652, citing Voter Information Guide, argument in favor of Prop. 47, at p. 38.) Reading a plea agreement disqualifier into the statute would defeat, rather than further that intent. (*T.W.*, at pp. 652-653.)

It follows that vacating a plea agreement after a Proposition 47 petition is granted in whole or part, or after reversal of an order denying the petition, would have the same

effect as denying the petition in the first instance in order to preserve the plea bargain. Such a procedure would be no less a hindrance to effectuating the intent of the voters. We thus decline respondent's request to remand for further proceedings, other than to direct the trial court to enter an order granting defendant's petition as to count 2.

## DISPOSITION

The order of the superior court entered June 23, 2015, denying the petition to reduce count 2 to a misdemeanor, is reversed. The order granting the petition as to count 1 is affirmed. The superior court is directed to enter an order reducing defendant's conviction of count 2 to a misdemeanor.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
ASHMANN-GERST