Filed 3/26/25  In re G.G. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re G.G., a Person Coming Under the Juvenile Court Law. | H051524 (Santa Clara County Super. Ct. No. 23JV46125A) |
| THE PEOPLE,  Plaintiff and Respondent,  v.  G.G.,  Defendant and Appellant. | |

The juvenile court adjudged the minor, G.G., a ward of the court after sustaining an allegation that G.G. committed second degree robbery (Pen. Code, § 211).[1]  The juvenile court found not true an allegation that G.G. personally used a handgun in the commission of the robbery (§ 12022.53, subd. (b)).

G.G. asserts that substantial evidence does not support the finding that he committed second degree robbery.  We will affirm the judgment.

---

[1] Unspecified statutory references are to the Penal Code.

# I. BACKGROUND

A juvenile wardship petition alleged that G.G. committed second degree robbery (§ 211) and that he personally used a handgun in the commission of the robbery (§ 12022.53, subd. (b)). At the contested jurisdictional hearing, a gas station/convenience store clerk testified that two juveniles entered the store. The clerk testified that after a while, the two juveniles brought a drink and a bag of chips to the counter. The clerk testified that the two juveniles told him their items were free and he responded that they needed to pay. A third juvenile wearing a hooded sweatshirt featuring the letters "GAP" then came into the store and asked the other two what was taking so long. The clerk testified that as he was setting the items aside, one of the juveniles grabbed a bag of chips and the group left the store. The clerk initially testified that the third juvenile with the "GAP" sweatshirt—later identified as G.G.—was the one who grabbed the bag of chips. However, on cross-examination, the clerk testified that the third juvenile did not take anything.

The store's manager testified that the clerk alerted him to the situation, and that as he came out from his office, he saw the three juveniles leaving the store. The manager testified that he ran after the three juveniles. Outside the store, the manager testified, one of the juveniles had his hand under his shirt about waist high and said "stay away or we will shoot you," or words to that effect. The manager told police who responded to the store that he saw this juvenile display a handgun. However, at the jurisdictional hearing, the manager testified that he only saw "like a silver object" that could have been a handgun but also could have been "like a buckle of belt or something else." The manager testified that his statement to police was the result of "panic."

The manager repeatedly told police that the juvenile wearing the "GAP" hooded sweatshirt was the one who displayed a gun and made the statement about shooting the manager. At the jurisdictional hearing, the manager initially testified that he did not remember what the person who displayed the object and made the statement was

2

wearing. However, after having his recollection refreshed with his statement to police, the manager testified that the person was wearing a "Gap hoodie."

On cross-examination, G.G.'s counsel asked: "Do you think that the person who you saw have their hands under their sweater[] could have been someone that was not wearing the Gap sweater?" The manager replied that he was "not sure" because he was afraid at the time of the event. G.G's counsel also asked the store manager on cross-examination, "today do you think that it's possible that one of the kids that didn't have the Gap sweater is the one that kind of made that gesture under their jacket, is that possible?" The manager replied "[n]o" before stating: "I think, like, I'm not hundred percent sure but it was wearing hoodie." When G.G.'s counsel asked the manager to clarify, the manager responded: "That guy was wearing hoodie." G.G.'s counsel then asked again: "[I]s it possible that the kid who was wearing the hoodie that was not the Gap hoodie could have been the one who made the gesture, is that correct?" The manager replied: "Yeah, maybe." The manager testified that his perception may have been affected by flashbacks of a prior robbery he experienced.

The prosecution also called three San Jose police officers. One officer testified that when she contacted the store manager soon after the incident, the store manager could not talk and was "breathing heavily" and "shaking." This officer testified that the manager's demeanor "progressively got worse" to the point where medical attention was offered and the manager had to sit down. The officer testified that the store manager identified the juvenile with the "Gap gray sweater" as the one who pulled out a gun, and that the store manager was "unwavering" on this point. This officer initially testified that video from the store's interior showed the third juvenile with the "GAP" sweatshirt take the bag of chips while the other two also grabbed items. However, on cross-examination, the officer agreed upon viewing the video that the third juvenile with the "GAP" sweatshirt did not appear to take anything from the store.

3

A second officer testified that when he responded to the store, he viewed a photo taken from the surveillance video footage and he identified G.G. as the person in the "GAP" hooded sweatshirt based on his previous contacts with G.G. This officer testified: "When they showed me the photograph I knew it was [G.G.] instantly."

A third officer testified that police obtained a warrant to search G.G.'s mother's residence. This officer testified that in a bedroom identified as G.G.'s police found a "gray hooded sweater with the letters gap, G-A-P" on top of a hamper. This officer also testified that they found "10 BB guns and Airsoft guns" in G.G.'s mother's bedroom.

G.G.'s father also briefly testified for the prosecution, identifying the residence at which G.G. and G.G.'s mother lived. Video from the store's interior was introduced into evidence. No video from the store's exterior was introduced.

The defense called one witness. Dr. Kathy Pezdek, a psychology professor, was recognized as an expert in "cognitive psychology, eye[]witness memory and identification." Dr. Pezdek testified about seven factors she identified as potentially impacting the accuracy of eyewitness identification in the instant matter. For example, she testified that "[t]he presence of a weapon is a salient form of distraction" that "lowers the probability of a correct identification," and that "at a high level of stress your ability to encode the details of that person are inhibited." However, she also testified that if a person in the store manager's situation was looking at a person wearing a sweatshirt with large "GAP" lettering on it, "that would be a notable detail that he probably has correct." Dr. Pezdek also testified on cross-examination that other factors that can negatively affect eyewitness identification such as lighting conditions or alcohol and drug use were not implicated in the instant case.

Following arguments, the juvenile court adjourned to consider the evidence. When the matter resumed nearly three weeks later, the juvenile court sustained the second degree robbery count. The court stated that it found all the witnesses to be

4

credible, and it noted that "Dr. Pezdek's testimony was very enlightening and educational also."

The juvenile court stated that "it's very clear to the Court that [G.G.] was the youth that was wearing the Gap sweatshirt" based on the surveillance video and the clothing found in G.G.'s room. The court found that the prosecution proved the robbery allegation beyond a reasonable doubt, stating: "The property was taken, it was not his own, taken from his immediate presence. Court believes that [G.G.] did use fear or force in the asportation of the crime -- portion of the crime. And I'll tell you, this part was not a hard call for the Court[;] it's pretty clear to the Court that [G.G.] participated in this crime of second degree robbery."

The juvenile court then found that the prosecution did not prove the personal use of a handgun allegation beyond a reasonable doubt. The juvenile court stated that the store manager stated "five to seven times" the night of the event that the person wearing the "GAP" sweatshirt pulled out a gun. The court stated that when the store manager testified at the hearing that he was not sure he saw a gun, the manager "seemed very emotional, seemed like he was still scared." The juvenile court stated that "[i]t's clear to me that the evening this happened [the manager] truly believed he saw a gun." However, the court stated that it "didn't see any evidence that any gun had been found" because "though there were . . . Airsoft type of guns found in his mother's home, none matched the actual description of the gun given by the witness." The juvenile court stated that with "the witness wavering and with no gun being shown to this Court I just can't -- I can't find by beyond a reasonable doubt that [G.G.] did indeed use a gun."

The juvenile court then stated that its finding regarding the personal use of a handgun allegation did not affect its finding that G.G. committed second degree robbery. The court stated: "But I do not doubt at all that he gestured and with a gesture either reaching to his waistband or reaching under his sweatshirt along with the words of, you

5

know, stop or -- stop following or we'll shoot or I'll shoot, those two things combined I think make up the fear that is a part of a second degree robbery charge."

The juvenile court required G.G. to serve 10 days in the Community Release Program, and the court released G.G. to the custody of his parents on probation with certain conditions imposed.

G.G. timely appealed.

## II. DISCUSSION

G.G. contends that substantial evidence does not support the juvenile court's finding that he committed second degree robbery, citing issues with witnesses' identification. He asserts that the store's clerk "incorrectly attributed the taking of merchandise to the third juvenile wearing the GAP hoodie," and that the clerk did not witness the actions outside the store, so the clerk did not witness an act of robbery. G.G. then argues that the store manger's testimony was inconsistent with his statement to police, because the manager testified that he was not certain whether he saw a handgun during the incident and was not certain that the person in the "GAP" sweatshirt was the one who made the gesture and statement.

G.G. notes that video surveillance footage contradicted witnesses' accounts that he was the one who took the bag of chips. He argues that the store manager's statements to police that the person identified as G.G. made the gesture and statement was a product of the manager's "highly emotional state" when these statements were made. He further asserts that at one point in his testimony, the store manager testified that the "GAP" wording was on the back of the sweatshirt rather than the front, thus rendering his identification unreliable. G.G. also cites the testimony of Dr. Pezdek to argue that the eyewitness identification of G.G.'s role in the incident was not reliable.

G.G. concludes by asserting: "A rational trier of fact would not rely on [the store manager's] prior statement to determine beyond a reasonable doubt that Appellant was correctly identified as the juvenile who had made a gesture, but then go on to find that

6

Appellant did not personally use a firearm in apparent contradiction to that same statement. [The manager] confirmed during his testimony that another of the three juveniles could have been the juvenile who made the gesture. A rational trier of fact would not have found beyond a reasonable doubt that Appellant was the juvenile who made the gesture described by [the manager]."

The Attorney General responds by noting that an officer identified G.G. from the surveillance video as the person wearing the "GAP" sweatshirt, and that the juvenile court "reconciled the inconsistencies in the clerk's and store manager's testimony as being the product of their fear." The Attorney General asserts that the sole issue on appeal is whether G.G. was properly identified, and that the credibility of witnesses is the exclusive province of the trier of fact.

A. *Legal Principles*

"We review [G.G.'s] contentions using the same standard of review that applies in adult criminal cases. [Citation.] Specifically, we determine whether substantial evidence—'evidence that is reasonable, credible, and of solid value'—supports the juvenile court's findings. [Citation.] We view the evidence 'in the light most favorable to the prosecution and presume in support of the [findings] the existence of every fact the [court] could reasonably have deduced from the evidence.' [Citation.] We 'accept [all] logical inferences that the [court] might have drawn from the . . . evidence' [citation], but reject inferences ' "based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work" ' [citations]. We will reverse only if ' "it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the [court's findings].' [Citation.]" (*In re I.A.* (2020) 48 Cal.App.5th 767, 778 (*I.A.*).)

"Robbery is the felonious taking of personal property in the possession of another, from his [or her] person or immediate presence, and against his [or her] will, accomplished by means of force or fear." (§ 211.) Robbery has six elements: (1) the defendant took property that was not his or her own; (2) the property was in the

7

possession of another person; (3) the property was taken from the other person or the other person's immediate presence; (4) the property was taken against that person's will; (5) the defendant used force or fear to take the property or to prevent the person from resisting; and (6) when the defendant used force or fear, he or she intended to deprive the owner of the property permanently or to remove the property from the owner's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property. (See CALCRIM No. 1600.) "[A] defendant who uses force or fear in an attempt to escape with property taken by larceny has committed robbery. [Citations.]" (*People v. Williams* (2013) 57 Cal.4th 776, 787.)

"The crime of robbery includes the element of asportation, the robber's escape with the loot being considered as important in the commission of the crime as gaining possession of the property." (*People v. Estes* (1983) 147 Cal.App.3d 23, 27.) Thus, "[i]t is sufficient to support the conviction that appellant used force to prevent the [other person] from retaking the property and to facilitate his [or her] escape." (*Id.* at p. 28.) "Whether defendant used force to gain original possession of the property or to resist attempts to retake the stolen property, force was applied against the [other person] in furtherance of the robbery and can properly be used to sustain the conviction." (*Ibid.*) "[T]he willful use of fear to retain property immediately after it has been taken from the owner constitutes robbery." (*People v. Flynn* (2000) 77 Cal.App.4th 766, 772.)

**B. *Substantial Evidence Supports the Juvenile Court's Finding***

Substantial evidence supports the juvenile court's conclusion that G.G. was the third juvenile depicted in the video footage as wearing the "GAP" hooded sweatshirt. An officer "instantly" identified G.G. as the person wearing this sweatshirt based on their past interactions. In addition, a "GAP" sweatshirt matching that in the video footage was found in G.G.'s bedroom.

The evidence did not demonstrate that G.G. physically took the bag of chips from the store. While the clerk and an officer initially testified that the person wearing the

8

"GAP" sweatshirt was the one who grabbed the bag of chips, video footage demonstrated that one of the other juveniles was the one who physically took the bag of chips, as the witnesses acknowledged on cross-examination.

While G.G. was not the person who physically took the item, substantial evidence supports the juvenile court's finding that G.G. committed second degree robbery by using force or fear during the asportation phase. The store manager was "unwavering" in telling police that the person wearing the "GAP" hooded sweatshirt was the one who pulled out what the store manager thought was a gun and who made the statement about shooting the manager. At the jurisdictional hearing the manager testified that the item he saw may not have been a handgun; however, he testified after having his recollection refreshed that the person who made the gesture and the statement was the one wearing the "GAP" hooded sweatshirt. The fact that the manager testified on cross-examination that he was "not sure" on this point did not require the juvenile court to credit the testimony on cross-examination over the manager's statements to police and his testimony on direct examination. In addition, even as he admitted his lack of certainty as to the identity of the person who made the gesture and statement, the manager reaffirmed that the person was wearing the "GAP" hooded sweatshirt.

The juvenile court concluded that issues with the manager's testimony were the result of the manager still being "very emotional" and "scared" during his testimony. The juvenile court was in the best position to assess the manager's demeanor and credibility. "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]" (*People v. Maury* (2003) 30 Cal.4th 342, 403.) The witness testimony in this matter, combined with video footage and discovery of the "GAP" sweatshirt in G.G.'s bedroom, provides substantial evidence

9

to support the juvenile court's finding that G.G. committed second degree robbery. As the prosecutor noted in argument, one of the other two juveniles was not wearing clothing that could be mistaken for the "GAP" hooded sweatshirt. In addition, the second juvenile left the store carrying items in each hand. This provides further support for the juvenile court's finding that G.G. was the one who made the gesture and statement toward the store manager.

G.G. further argues that the store manager's testimony is not credible in part because at one point he testified that the "GAP" letters were on the "back side" of the sweatshirt. However, the manager testified on redirect that the letters were on the "front center" of the sweatshirt. We also disagree with G.G. that an inherent contradiction exists between the juvenile court's finding that G.G. committed robbery during the asportation phase and its not true finding that G.G. personally used a handgun. The juvenile court found that the store manager believed he saw a gun and that G.G. threatened to shoot the manager while making a gesture toward his waist and displaying a "silver" object. Even if the evidence did not prove beyond a reasonable doubt that G.G. actually used a handgun, substantial evidence supports the juvenile court's finding that G.G. used force or fear through the threat of a shooting in the asportation phase.

G.G. also asserts that the store manager's testimony is not credible because of eyewitness identification factors identified by Dr. Pezdek. The juvenile court stated that it considered this testimony, and it nonetheless concluded that the manager accurately identified the person who made the gesture and statement as the person wearing the "GAP" hooded sweatshirt. As Dr. Pezdek testified, a sweatshirt with large "GAP" lettering would be a notable feature that the store manager "probably has correct." While G.G. argues that "the juveniles were similarly dressed and had a similar appearance to one another," a police officer had no difficulty identifying G.G. as the one wearing the "GAP" sweatshirt, an item of clothing the witnesses found distinctive. Video from the

10

store revealed that neither of the other two juveniles had lettering on their clothing that could be mistaken for the "GAP" lettering on G.G.'s sweatshirt.

The juvenile court's finding that G.G. committed second degree robbery is supported by " 'evidence that is reasonable, credible, and of solid value.' " (*I.A.*, *supra*, 48 Cal.App.5th at p. 778.) Although the evidence showed that G.G. did not physically grab the bag of chips, he used force or fear in the asportation of the item. G.G. does not argue that he is not culpable for the robbery in any respect other than arguing that he was not the person who made the gesture and statement. Viewed in the light most favorable to the challenged order, substantial evidence supports the juvenile court's finding.

### III. DISPOSITION

The juvenile court's dispositional order is affirmed.

_____
Greenwood, P. J.

WE CONCUR:

_____
 Grover, J.

_____
 Wilson, J.

H051524 People v. G.G.